The KATZ INTERESTS, INC., et al., Appellees,

v.

The MUSIC FACTORY, L.L.C., et al., Appellants.

[Cite as *Katz Interests, Inc. v. Music Factory, L.L.C.*, 170 Ohio App.3d 663, 2007-Ohio-1413.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 05AP–1148 and 05AP–1149.

Decided March 27, 2007.

Joseph W. Edwards and J. Harris Leshner, for appellees.

Cooper & Elliott, L.L.C., Charles H. Cooper Jr., and Rex H. Elliott, for appellants.

BROWN, Judge.

{¶ 1} Kyle Katz owned and operated The Katz Interests, Inc., a corporation that purchased commercial property and leased it out. Katz also owned and operated Penwest Assets, Inc., a corporation that held a D–5/D–6 liquor license.

{¶ 2} In May 2002, Jeffrey Graham contacted Katz regarding the possibility of leasing one of Katz Interests' properties. Graham and Michael McCuen owned two limited liability companies: The Music Factory, L.L.C., and J & M Enterprises, L.L.C.

{¶ 3} On September 27, 2002, Katz Interests entered into a lease agreement with The Music Factory for a property located at 382 West Nationwide Boulevard. The lease term was 25 months, commencing October 1, 2002, and ending October 31, 2004.

{¶ 4} In February 2003, the parties executed an addendum to the original lease agreement. The addendum allowed The Music Factory to lease additional space at 384 West Nationwide Boulevard.

{¶ 5} On March 24, 2003, Katz sent Graham, McCuen, and The Music Factory notice to leave the premises on grounds of nonpayment of February 2003 utilities and February and March 2003 rent. Katz Interests subsequently filed an eviction action; the parties ultimately reached an agreement that permitted The Music Factory to catch up with the rent obligations. In April 2003, Katz Interests and The Music Factory executed a second addendum, shortening the lease term by one year. Graham and McCuen each signed the addendum individually.

{¶ 6} Graham and McCuen had been interested in leasing the space for The Music Factory only if they could secure a liquor license. Accordingly, on October 2, 2002, J & M executed a purchase agreement with Penwest to purchase its liquor license for $35,000. The agreement required J & M to provide a down payment of $11,000. The agreement further required J & M to execute a cognovit note in the amount of $24,000, to be paid in 12 monthly installments of $2,000 beginning in November 2002. McCuen signed the note as manager member of J & M; Graham and McCuen also signed the note individually. In

exchange, Penwest agreed to deliver the license and cooperate in the transfer process.

{¶ 7} Contemporaneously, Penwest and J & M executed a management agreement that permitted J & M to utilize the liquor license pending approval of the transfer. Pursuant to this agreement, J & M was obligated to collect and pay sales tax on all liquor sales.

{¶ 8} J & M filed the transfer application with the Ohio Department of Commerce, Division of Liquor Control on October 7, 2002. Between October 24, 2002, and April 25, 2003, the division sent J & M five notices requesting additional documentation necessary to complete the transfer process.

{¶ 9} Due to J & M's delay in providing the required documentation, the transfer of the liquor license was still pending as of June 2003. On June 11, 2003, Penwest cancelled the transfer for reasons that are not altogether clear from the record, but appear to be unrelated to J & M's obligations under the purchase agreement. At the time of cancellation, J & M had paid the $11,000 down payment and was current on its $2,000 monthly obligation; accordingly, J & M had paid a total of $27,000 of the $35,000 purchase price. A balance of $8,000 remained.

{¶ 10} On July 1, 2003, Katz sent McCuen an e-mail notifying him that the transfer application had been cancelled and that any further use of the license would be unlawful.

{¶ 11} In early July 2003, The Music Factory abandoned the rental property. After cleaning the property, Katz attempted to re-rent it, but was unsuccessful.

{¶ 12} In October 2003, the Ohio Department of Taxation notified Penwest that renewal of its liquor license was in jeopardy due to the failure to pay sales tax for March, April, May, and June 2003. Katz Interests paid the delinquent taxes on behalf of J & M.

{¶ 13} Subsequent to canceling the transfer of the liquor license, Penwest executed on the cognovit note in the amount of $8,000. Penwest ultimately collected $8,961.66 from McCuen pursuant to a judgment lien placed on a property he owned.

{¶ 14} On August 1, 2003, in case No. 03CVH–07–8468, Katz Interests filed a complaint against The Music Factory, Graham, and McCuen asserting claims for breach of contract and unjust enrichment arising from the alleged failure to pay rent, utilities, maintenance charges, and late fees required under the original lease agreement and addenda. On October 6, 2003, The Music Factory, Graham, and McCuen asserted a counterclaim for breach of contract stemming from Katz Interests' alleged wrongful eviction.

{¶ 15} On December 16, 2003, in case No. 03CVC–12–13782, Graham, McCuen, J & M, and The Music Factory filed a complaint against Katz, Penwest, and Katz Interests. The complaint alleged that Katz fraudulently misrepresented that he would transfer Penwest's liquor license. The complaint further alleged that Katz, Penwest, and Katz Interests breached the purchase agreement by canceling transfer of the liquor permit and breached the lease agreement by evicting The Music Factory from the premises. The complaint also alleged that Katz, Penwest, and Katz Interests were unjustly enriched in retaining the liquor permit without repaying the $35,000 purchase price. The complaint also requested injunctive relief compelling Katz, Penwest, and Katz Interests to transfer the liquor permit to J & M.

{¶ 16} On April 8, 2004, Graham, McCuen, J & M, and The Music Factory filed a motion to consolidate the two cases. By entry filed May 5, 2004, the trial court granted the motion to consolidate.

{¶ 17} On February 18, 2005, Penwest filed a motion for leave to file a counterclaim against J & M and The Music Factory. Penwest's counterclaim alleged that J & M and The Music Factory breached the management agreement by failing to pay sales tax, interest, and penalties for the months of March, April, May, and June 2003. Penwest further alleged that J & M and The Music Factory were unjustly enriched by Penwest's payment of these obligations.

{¶ 18} The matter was tried before a jury. At the close of testimony, the trial court granted Katz's motion for a directed verdict on the fraud claim. On June 2, 2005, the jury returned a verdict in favor of Katz Interests for $21,282 on its breach-of-contract claim against The Music Factory, Graham, and McCuen. The jury found in favor of Penwest for $9,210.03 on its breach-of-contract counterclaim against The Music Factory and J & M. The jury returned a verdict in favor of McCuen for $19,000 on his unjust-enrichment claim against Penwest. Finally, the jury found in favor of Penwest and against J & M on J & M's claim for breach of contract. The trial court memorialized the jury verdicts via judgment entry filed June 8, 2005.

{¶ 19} On June 22, 2005, McCuen filed a motion for prejudgment interest regarding his claim for unjust enrichment against Penwest. Also on June 22, 2005, J & M and McCuen filed a motion for judgment notwithstanding the verdict ("JNOV") and a motion for new trial or, in the alternative, additur. On July 8, 2005, Penwest filed a memorandum contra McCuen's motion for prejudgment interest, as well as a memorandum contra J & M and McCuen's motion for JNOV and motion for new trial and/or additur.

{¶ 20} By decision filed August 17, 2005, the trial court denied J & M and McCuen's motion for JNOV, new trial, or additur. The trial court denied in part McCuen's motion for prejudgment interest, finding that McCuen was entitled to

prejudgment interest "from the period when the award became due and owing on June 2, 2005." The trial court journalized its decision on September 26, 2005.

{¶ 21} The Music Factory, J & M, and McCuen (collectively, "appellants") filed a notice of appeal from the trial court's June 8, 2005 judgment journalizing the jury verdicts, from the court's August 17, 2005 decision denying appellants' motion for JNOV, new trial, or additur, and denying in part McCuen's motion for prejudgment interest, and from the trial court's September 26, 2005 judgment entry journalizing the trial court's decision denying appellants' post-trial motions. On appeal, appellants set forth the following three assignments of error for review:

[I.] The jury erred in awarding $19,000.00 to appellant Michael McCuen while simultaneously rejecting J & M Enterprises' breach of contract claim. The jury should have awarded $8,961.66 to McCuen and $27,000.00 to J & M Enterprises.

[II.] The trial court erred in denying defendants-appellants Michael McCuen and J & M Enterprises' motion for judgment notwithstanding the verdict or in the alternative for a new trial or in the alternative for additur.

[III.] The trial court erred in denying defendant-appellant Michael McCuen's motion for prejudgment interest.

{¶ 22} Appellants' first and second assignments of error are interrelated and will be addressed jointly. Together, they assert that the jury erred in awarding McCuen $19,000 on his unjust-enrichment claim against Penwest while simultaneously rejecting J & M's breach-of-contract claim against Penwest. Appellants argue that the jury should have entered judgment for J & M in the amount of $27,000 on its breach-of-contract claim and judgment for McCuen in the amount of $8,961.16 on his unjust-enrichment claim. Since this argument was the subject of appellants' motion for JNOV, new trial, or additur, appellants further contend that the trial court erred in denying those motions.

{¶ 23} Civ.R. 50(B) governs motions for JNOV. The standard for granting such a motion is the same as the standard for a motion for a directed verdict. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 477 N.E.2d 1145, citing *Ayers v. Woodard* (1957), 166 Ohio St. 138, 140 N.E.2d 401, paragraph one of the syllabus. In considering a motion for JNOV, the trial court must construe all of the evidence most strongly in favor of the party against whom the motion was made. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 504 N.E.2d 19. When there is substantial, competent evidence upon which reasonable minds may reach different conclusions, the motion must be denied. Id. " 'Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination.' " Id., quoting *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 344 N.E.2d 334. Although in reaching a

decision on a motion for JNOV the court must review and consider the evidence, such decisions present a question of law as they test the legal sufficiency of the evidence. *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 509 N.E.2d 399. Based upon these standards, the appellate court conducts an independent review of the case in order to determine the propriety of the trial court's actions. *Fraelich v. W. Res. Care Sys.* (Mar. 22, 1999), Mahoning App. No. 97 CA 70, 1999 WL 167840.

{¶ 24} It is undisputed that the purchase agreement between J & M and Penwest set the purchase price for the liquor license at $35,000. It is further uncontroverted that J & M provided the $11,000 down payment as required by the purchase agreement and that J & M subsequently made eight monthly payments of $2,000 between November 2002 and June 2003. Accordingly, J & M was current on its obligation under the purchase agreement on June 11, 2003, when Penwest cancelled the transfer of the liquor license. As of that date, J & M had paid $27,000 toward the $35,000 purchase price.

{¶ 25} It is further uncontroverted that after Penwest cancelled the transfer of the liquor license, a balance of $8,000 remained on the purchase agreement. Penwest thereafter obtained a cognovit judgment for that amount and ultimately collected $8,961.66 from McCuen pursuant to a judgment lien on his property.

{¶ 26} The uncontroverted evidence thus establishes that J & M paid $27,000 and McCuen paid $8,961.66, for a total of $35,961.66, for a liquor license that had a purchase price of $35,000. Despite having received more than the purchase price, Penwest never transferred the license. Indeed, Penwest retained both the liquor license and the $35,961.66. In that this evidence is uncontroverted, the trial court had nothing to construe in favor of Penwest. Accordingly, reasonable minds could reach but one conclusion, that being that Penwest breached the purchase agreement when it cancelled the transfer, that Penwest was unjustly enriched through retention of the liquor license without repayment of McCuen's payment toward the purchase price, that J & M was entitled to recover the total amount it had paid on the contract at the time of the breach, $27,000, and that McCuen was entitled to recover the total amount he paid toward the purchase price, $8,961.66. Accordingly, the trial court erred in denying appellants' motion for JNOV. Having so determined, we need not consider appellants' new trial and additur arguments. The first and second assignments of error are sustained.

{¶ 27} Appellants' third assignment of error asserts that the trial court erred in denying McCuen's motion for prejudgment interest on his $19,000 judgment. As our disposition of the first and second assignments of error requires that the trial court vacate that judgment, appellants' argument is moot. However, on remand, the trial court must determine the amount of prejudgment interest, if any, payable to J & M arising from its breach-of-contract claim and to McCuen

arising from his unjust-enrichment claim. The third assignment of error is overruled as moot.

{¶ 28} For the foregoing reasons, the first and second assignments of error are sustained, and the third assignment of error is overruled as moot. Accordingly, the judgments of the Franklin County Court of Common Pleas are hereby reversed, and these causes are remanded to that court with instructions to vacate the June 8, 2005 and September 26, 2005 judgments, enter judgment for J & M in the amount of $27,000, enter judgment for McCuen in the amount of $8,961.66, and determine the amount of prejudgment interest, if any, payable to J & M and McCuen.

Judgments reversed
and causes remanded.

BRYANT and PETREE, JJ., concur.